## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

|  |  |  |
|---|---|---|
| JOHN DOE, | : | |
| | : | **Civil Action No:** 6:20-CV-0146 |
| | : | (LEK/ATB) |
| **Plaintiff,** | : | |
| | : | |
| | : | |
| -against- | : | **NOTICE OF MOTION** |
| | : | |
| | : | |
| HAMILTON COLLEGE, | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

-------------------------------------------------------------------X

**PLEASE TAKE NOTICE** that Plaintiff, through his attorneys, Nesenoff & Miltenberg, LLP, hereby moves this Court for an e*x parte* order: (i) authorizing Plaintiff to file the Complaint, summons, and civil cover sheet in this action using the pseudonym "John Doe," and to litigate this matter as John Doe, and to file all other papers in this action under the name John Doe, and to identify certain other non-parties by pseudonym; and (ii) prohibiting Defendant (and its agents, employees, and representatives) from publicly identifying Plaintiff, in court filings or otherwise.

**PLEASE TAKE FURTHER NOTICE THAT** Plaintiff shall rely upon the Complaint and accompanying Memorandum of Law and the Declaration of Andrew T. Miltenberg, Esq., and attachments thereto, in support of the Motion.  Plaintiff also submits a proposed form of Order with this Motion.

**PLEASE TAKE FURTHER NOTICE THAT** Plaintiff requests oral argument on the motion.

Dated: February 11, 2020

NESENOFF & MILTENBERG, LLP

By: */s/ Andrew Miltenberg*
    Andrew T. Miltenberg, Esq.
    Stuart Bernstein, Esq.
    Adrienne Levy, Esq.
    (*pro hac vice admission pending*)
    363 Seventh Avenue, Fifth Floor
    New York, New York 10001
    T. (212) 736-4500
    amiltenberg@nmllplaw.com
    sbernstein@nmllplaw.com
    alevy@nmllplaw.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------X

JOHN DOE,                                              :

                                                 :     **Civil Action No:** 6:20-CV-0146

                                                 :            (LEK/ATB)

            **Plaintiff,**                          :

                                                 :

            **-against-**                            :

                                                 :

HAMILTON COLLEGE,                          :

                                                 :

            **Defendant.**                          :

----------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S *EX PARTE* MOTION TO PROCEED UNDER**
**<u>PSEUDONYM AND FOR PROTECTIVE ORDER</u>**

**NESENOFF & MILTENBERG, LLP**
**Attorneys for Plaintiff**
**363 Seventh Avenue, Fifth Floor**
**New York, New York 10001**
**(212) 736-4500**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION ................................................................................................... 1

STATEMENT OF FACTS ...................................................................................... 1

ARGUMENT ........................................................................................................ 3

  I.   Legal Standards........................................................................................... 3

     a.   New York Law Requires Anonymity. .......................................................... 3

     b.   The Second Circuit Balancing Test............................................................. 4

  II.  Plaintiff's Interest in Remaining Anonymous Outweighs the Need for Public Disclosure. 5

     a.   The Litigation Involves Matters That Are Highly Sensitive and of a Personal Nature. .. 5

     b.   Identification of Plaintiff would Pose a Risk of Retaliatory Physical or Mental Harm to Plaintiff.......................................................................................................... 8

     c.   Identification Presents Other, Severe Harms, Including that the Injury Litigated Against Would Be Incurred as a Result of the Disclosure of Plaintiff's Identity. ................... 10

     d.   Plaintiff Is Particularly Vulnerable to the Possible Harms of Disclosure, Particularly in Light of His Age.......................................................................................... 16

     e.   The Suit is Challenging the Actions of a Partially Federally-Funded College. ............. 16

     f.   Defendant Is Not Prejudiced by Allowing Plaintiff to Press His Claims Anonymously. ...................................................................................................... 17

     g.   The Plaintiff Has Sought to Keep his Identity Confidential. ......................................... 18

     h.   The Public's Interest in the Litigation is not Furthered by Requiring Plaintiff to Disclose His Identity, and There is a Weak Public Interest in Knowing Plaintiff's Identity. .. 18

     i.   There Are Minimal Alternative Mechanisms for Protecting the Confidentiality of the Plaintiff.......................................................................................................... 19

CONCLUSION.................................................................................................... 19

## **TABLE OF AUTHORITIES**

## **CASES**

*Doe No. 2 v. Kolko*, 242 F.R.D. 193 (E.D.N.Y. 2006) .................................................. 6, 17, 18, 19

*Doe v. Alger*, 317 F.R.D. 37 (W.D. Va. 2016) ..................................................................... 7, 9, 14

*Doe v. Allegheny College*, No. 17-cv-00031 (W.D.Pa. May 1, 2017).............................................. 8

*Doe v. Amherst Coll.*, 238 F. Supp. 3d 195 (D. Mass. 2017) .......................................................... 7

*Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018)...................................................................................... 6

*Doe v. Brandeis Univ.,* 177 F. Supp. 3d 561 (D. Mass. 2016) ........................................................ 7

*Doe v. Brown Univ.*, 166 F. Supp. 3d 177 (D.R.I. 2016)................................................................. 7

*Doe v. Brown Univ.*, 896 F.3d 127 (1st Cir. 2018) ......................................................................... 6

*Doe v. Colgate Univ.*, No. 15–CV–1069 (LEK) (DEP), 2016 WL 1448829
   (N.D.N.Y. Apr. 12, 2016) ........................................................................................................... 6

*Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016)........................................................................ 6

*Doe v. Cummins*, 662 Fed. Appx. 437 (6th Cir. 2016) .................................................................. 14

*Doe v. Del Rio*, 241 F.R.D. 154 (S.D.N.Y. 2006) .................................................................. 17, 18

*Doe v. George Washington Univ.*, 321 F. Supp. 3d 118 (D.D.C. 2018)........................................... 7

*Doe v. Middlebury*. No. 15-CV-192 (JGM), 2015 WL 5488109 (D.Vt. Sept. 16, 2015)............... 8

*Doe v. Old Dominion Univ.*, 289 F. Supp. 3d 744 (E.D. Va. 2018) ................................................ 6

*Doe v. Pennsylvania State Univ.*, 336 F. Supp. 3d 441 (M.D. Pa. 2018) ....................................... 7

*Doe v. Penzato*, 10-CV-5154 (MEJ), 2011 WL 1833007 (N.D. Cal. May 13, 2011) ................... 8

*Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d 602 (E.D. Va. 2016).......... 14

*Doe v. Salisbury Univ.*, 107 F. Supp. 3d 481 (D. Md. 2015)......................................................... 8

*Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981)................................................................................ 19

*Doe v. Swarthmore College*, No. 2:14-cv-00532-SD (E.D. Pa. Jan. 29, 2014)............................. 8

*Doe v. The Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799 (E.D. Pa. 2017)............. 7

*Doe v. Trs. of Univ. of Pennsylvania*, No. 16-cv-05088-JP (E.D. Pa. Sept. 26, 2016) ................. 10

*Doe v. Trustees of Boston Coll.*, 892 F.3d 67 (1st Cir. 2018) ......................................................... 7

*Doe v. Trustees of Dartmouth Coll.*, No. 18-CV-040-LM, 2018 WL 2048385 (D.N.H. May 2, 2018) ........................................................................................................................................ 15

*Doe v. Univ. of S. Florida Bd. of Trustees*, 15-CV-682-T-30 (EAJ), 2015 WL 3453753 (M.D. Fla. 2015) ......................................................................................................................... 8

*Doe v. Univ. of S.C.,* No. 18-CV-161 (TLW) (PJG), 2018 WL 1215045 (D.S.C. Feb. 12, 2018) .................................................................................................................. 7

*Doe v. Univ. of Scis.*, No. 19-cv-00358, 2019 WL 632022, (E.D. Pa. Feb. 14, 2019) ................. 7

*Doe v. Univ. of St. Thomas*, Docket No. 16-CV-1127, 2016 WL 9307609 (D. Minn. May 25, 2016) .......................................................................................................... 7, 15

*Doe v. Univ. of the South*, 687 F. Supp. 2d 744 (E.D. Tenn. 2009) ................................................ 8

*Doe v. Virginia Polytechnic Inst. & State Univ.*, Docket No. 18-CV-170, 2018 WL 5929647 (W.D. Va. Nov. 13, 2018) ......................................................................................................... 10

*Doe v. Washington & Lee Univ.,* No. 14-CV-00052, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015) ............................................................................................................. 8

*Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 10589th Cir. 2000) ................................ 17

*EW v. New York Blood Ctr.,* 213 F.R.D. 108 (E.D.N.Y. 2003) ............................................. 10, 17

*Roe v. Pennsylvania State Univ.*, Docket No. 18-CV-2142, 2019 WL 652527 (E.D. Pa. Feb. 15, 2019) ............................................................................................................. 6

*Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008) ................................... 4, 5, 19

## **STATUTES**

Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g ................................ 18

N.Y. Educ. Law § 6448 ................................................................................................................. 4

N.Y. Educ. Law § 6444(6) ............................................................................................................. 3

## OTHER AUTHORITIES

Richard Adams, *Warwick University Says Rape Threat Pair Won't Return*, Guardian (Feb. 4, 2019) https://www.theguardian.com/education/2019/feb/05/warwick-university-says-threat-pair-wont-return ................................................................................................................. 13

Mitchell Byars, *Protests at CU set for Monday as Student Charged in Rape*, Boulder Daily Camera (Mar. 14, 2019) https://www.dailycamera.com/2019/03/14/protests-at-cu-set-for-monday-as-student-charged-in-rape/ ......................................................................... 12

Carlsen et al., *#MeToo Brought Down 201 Powerful Men.  Nearly Half of Their Replacements are Women*, N.Y. Times, (Oct. 29, 2018), https://www.nytimes.com/interactive/2018/10/23/us/metoo-replacements.html .................... 11

*CBS News Fires Charlie Rose After Sexual Misconduct Allegations*, CBS News (Sept. 23, 2018), https://www.cbsnews.com/news/charlie-rose-fired-cbs-news-sexual-misconduct-allegations/12

Jon Hyman, Esq., *Sexual Harassment is the Hiring Scarlet Letter*, Workforce.com (Feb. 8, 2018), available at https://www.workforce.com/2018/02/08/sexual-harassment-hiring-scarlet-letter/ ................................................................................................................ 11

Ariel Kaminer, *Accusers and the Accused, Crossing Paths at Columbia University*, N.Y. Times (Dec. 21, 2014) https://www.nytimes.com/2014/12/22/nyregion/accusers-and-the-accused-crossing-paths-at-columbia.html .............................................................................. 12

Gillian Mezey & Michael King, *Male Victims of Sexual Assault*, 27 Med. Sci. & Law 122-24 (1987) ............................................................................................................................... 9

Brian Stelter and Tom Kludt, *NBC Fires Matt Lauer After Complaint About 'Inappropriate Sexual Behavior'*, CNN (Nov. 29, 2017), https://money.cnn.com/2017/11/29/media/matt-lauer/index.html?iid=EL ............................................................................................... 12

Patrick Witt, *A Sexual Harassment Policy that Nearly Ruined My Life*, Boston Globe (Nov. 3, 2014), https://www.bostonglobe.com/opinion/2014/11/03/sexual-harassment-policy-that-nearly-ruinedlife/hY3XrZrOdXjvX2SSvuciPN/story.html ...................................................... 12

Cathy Young, *Exclusive: Brown University Student Speaks Out on What It's Like to Be Accused of Rape*, Daily Beast (June 8, 2014), https://www.thedailybeast.com/exclusive-brownuniversity-student-speaks-out-on-what-its-like-to-be-accused-of-rape .......................... 13

## INTRODUCTION

Plaintiff, by his attorneys, Nesenoff & Miltenberg, LLP, hereby respectfully requests this Court to: (i) permit Plaintiff to proceed in the above-captioned matter under the pseudonym John Doe, and to similarly permit Plaintiff to identify other non-parties to this litigation by pseudonym; and (ii) issue a protective order precluding Defendant (and its agents, employees, and representatives) from disclosing Plaintiff's identity, through court filings or otherwise.  In light of the private, sensitive, and highly personal nature of the allegations contained in the Complaint, the risk that identifying Plaintiff would subject him to the precise harm he is seeking to avoid by way of this action, and the minimal public interest in learning Plaintiff's identity, Plaintiff's identity should not be disclosed to the public at this time.

Plaintiff is prepared to provide a statement of his true identity under seal, upon the Court's request.

## STATEMENT OF FACTS

The complete facts underlying this litigation are set forth fully in Plaintiff's Complaint, filed simultaneously with the instant motion and incorporated herein by reference.  For the Court's convenience, a summary of the relevant facts follows.

Plaintiff, a male undergraduate student at Hamilton College ("Hamilton" or "the College"), was falsely accused by three of his former sexual partners of violations of Hamilton's Sexual Misconduct Policy ("the Policy").  (Cmpl. ¶¶ 1-9).  Each of the claims arose well after the end of the complainants' respective relationships with Plaintiff (with the closest report being made nine months after the fact); each of the claims revolved around a sexual encounter at the beginning or middle of Plaintiff's respective relationships with the women; and each of the women admitted that they had (and even initiated) consensual sexual intercourse with Plaintiff after the dates of the

1

alleged assaults.  *Id.*  The complaints were not filed all at once, but rather, were filed successively, with each new complainant deciding to file a claim only after it became clear that the prior complainant's claims were unsubstantiated.  *Id.*

Throughout the course of these investigations, Plaintiff was forthright and open with the investigators, and in each case he submitted his full text history with the complainant. (Compl. ¶¶ 13-18).  In each case, the contemporaneous text messages either directly contradicted or severely undercut the complainants' allegations and credibility.  In one case, they even proved that materials provided by the complainant to Hamilton were fabricated/deliberately altered.  *Id.* Unfortunately, facts seemed to play little role in Hamilton's decision-making process. Notwithstanding the absolute dearth of evidence supporting the claims against Plaintiff, and notwithstanding the substantial evidence that called into question the complainants' credibility in each case, Plaintiff was inevitably found responsible on the final complaint for nonconsensual sexual intercourse, and was expelled from Hamilton in Spring 2019.  (Compl. ¶¶ 161-167).  Worse still, Plaintiff was retaliated throughout the process for daring to file his own complaint of sexual misconduct against a female student. (Compl. ¶ 17).

On information and belief, Hamilton's decision was erroneous and improperly influenced by Plaintiff's male gender; Hamilton College had come under significant pressure, both from the federal government (at the risk of losing federal funding), and Hamilton's own students, to better protect women and more severely prosecute and punish male respondents—specifically, respondents against whom multiple complaints had been lodged.  Indeed, one of the very students who was particularly vocal in this criticism on campus served as a "witness" in one of Plaintiff's Title IX proceedings, and on information and belief, also played a role in pressing one of the other complainants to file in the first place.  (Compl. ¶¶ 8, 28-69).

In April 2019, Plaintiff's appeal was denied, leaving the instant action as his only option to restore his good name by vacating the false and erroneous outcome finding him responsible. (Compl. ¶ 167).   In accordance with New York state law, Plaintiff's transcript must bear an annotation that he was "expelled after the finding of responsibility for a code of conduct violation." N.Y. Educ. Law § 6444(6).   This expulsion and annotation has and will tarnish Plaintiff's reputation and severely impede his ability to pursue future educational and career prospects. Specifically, as a result of Defendant's actions, Plaintiff will be forced to disclose and explain to potential future employers or educators that he was expelled from Hamilton for sexual assault. (Compl. ¶¶ 232-241).

Through this action, Plaintiff seeks, *inter alia*, an order directing Hamilton to set aside the decision finding him responsible for sexual assault and to have all annotations referencing the finding removed from his transcript.   Without appropriate redress, the unjustified decision and sanction will continue to cause irreversible damage to Plaintiff's reputation, education, and future career.   These efforts, however, will prove elusive if Plaintiff is forced to proceed under his own name in this litigation, as the entire purpose of the suit is to dissociate Plaintiff's name from the false and extremely damaging allegations and finding of sexual assault.   Accordingly, Plaintiff seeks to proceed pseudonymously.

## ARGUMENT

### I. Legal Standards.

#### a. New York Law Requires Anonymity.

New York state law expressly requires that students involved in sexual misconduct disciplinary proceedings must remain anonymous in any subsequent civil suit regarding the outcome of the disciplinary process:

> [I]n any proceeding brought against an institution which seeks to vacate or modify a finding that a student was responsible for violating an institution's rules regarding [sexual misconduct], the <u>name and identifying biographical information of any student shall be presumptively confidential and shall not be included in the pleadings and other papers</u> from such proceeding absent a waiver or cause shown as determined by the court.

> N.Y. Educ. Law § 6448 (McKinney).

Accordingly, Plaintiff posits that this Court need not engage in the ordinary balancing test to determine the instant motion, as the anonymity Plaintiff seeks is required by law. However, even under the relevant Second Circuit balancing test, Plaintiff should still prevail, as his interest in retaining anonymity greatly outweighs the public interest in disclosure.

### b. The Second Circuit Balancing Test.

The Second Circuit has identified the relevant inquiry on a motion to proceed by pseudonym as "a balancing test that weighs the plaintiff's need for anonymity against countervailing interests in full disclosure." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008) (reversing district court's denial of plaintiff's motion to proceed by pseudonym, where plaintiff was suing state and municipal officers for sexual assault). In balancing these interests, the reviewing court looks to the following non-exhaustive factors:

> (1) whether the litigation involves matters that are highly sensitive and [of a] personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the . . . party [seeking to proceed anonymously] or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept

4

confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 190 (alterations in original) (internal quotations and citations omitted).

When the factors favoring non-disclosure outweigh the factors favoring public access, the reviewing court should grant the plaintiff's motion to proceed by pseudonym. As explained in further detail below, an evaluation of the relevant factors in this case militates in favor of permitting Plaintiff to proceed pseudonymously.

## II. Plaintiff's Interest in Remaining Anonymous Outweighs the Need for Public Disclosure.

### a. The Litigation Involves Matters That Are Highly Sensitive and of a Personal Nature.

Plaintiff should be permitted to proceed under a pseudonym given the highly sensitive and personal nature of this litigation. As is evident from the Complaint, the claims which form the subject of this Complaint involve extremely intimate, graphic, sexual acts between young adults, including acts that may fairly be considered to be on the spectrum of sexual fetish. Plaintiff respectfully suggests that the need for privacy of the involved students significantly outweighs the general public's need to know their identities.

Further, Plaintiff does not contend that the revelation of his name would result in mere embarrassment. Rather, Plaintiff notes the highly sensitive issues involved with claims of sexual assault—in this case, Plaintiff was not only falsely accused of sexual assault, he is also a male victim who reported sexual assault by a female. He is therefore twice as vulnerable to negative

stigmatization, harassment, and harm as a result of the disclosure of his name.  *See, e.g.*, *Doe v. Brown Univ.*, 896 F.3d 127 (1st Cir. 2018) (plaintiff, alleged victim of sexual assault, permitted to proceed anonymously); *Roe v. Pennsylvania State Univ.*, No. 18-CV-2142, 2019 WL 652527 (E.D. Pa. Feb. 15, 2019) (Plaintiff, alleged victim of sexual assault, permitted to proceed anonymously, and alleged assailant also referred to by pseudonym); *Doe v. Old Dominion Univ.*, 289 F. Supp. 3d 744, 748 (E.D. Va. 2018) (noting court granted plaintiff leave to proceed under pseudonym, where plaintiff student, suing her university, was alleged victim of sexual assault);  *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006) (permitting plaintiff students alleging sexual abuse to proceed anonymously against their school, holding "the public generally has a strong interest in protecting the identities of sexual assault victims").

Moreover, recognizing the delicate nature of cases such as the one at bar, courts across the country have routinely permitted similarly situated plaintiffs—students falsely accused of sexual misconduct and/or intimate partner violence—to proceed by pseudonym, acknowledging the great danger such plaintiffs face in proceeding under their own names, and the futility of the lawsuit if the allegations will be forever publicly associated with plaintiffs' names.  As this very District Court has explained, "protecting the anonymity of sexual assault victims <u>and</u> those accused of committing sexual assault can be an important safeguard to ensure that the due process rights of all parties are protected."  *Doe v. Colgate Univ.*, 15–CV–1069 (LEK) (DEP), 2016 WL 1448829, at *2 (N.D.N.Y. Apr. 12, 2016) (emphasis added).  In this case, Plaintiff is both the victim and the accused, making him particularly entitled to protection.

For cases permitting accused students to proceed anonymously, *see: Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018) (student found responsible for sexual misconduct); *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016) (student found responsible for sexual misconduct); *Doe v. Univ.*

*of Scis.*, No. 19-cv-00358, 2019 WL 632022, at *1 (E.D. Pa. Feb. 14, 2019) (plaintiff permitted to proceed as John Doe without formal motion practice); *Doe v. Trustees of Boston Coll.*, 892 F.3d 67 (1st Cir. 2018); *Doe v. Pennsylvania State Univ.*, 336 F. Supp. 3d 441, 442 (M.D. Pa. 2018); *Doe v. George Washington Univ.*, 321 F. Supp. 3d 118 (D.D.C. 2018) (plaintiff student found responsible for sexual assault in university Title IX proceeding); *Doe v. Univ. of S.C.,* No. 18-CV-161 (TLW) (PJG), 2018 WL 1215045, at *1 (D.S.C. Feb. 12, 2018) ("Doe has demonstrated compelling interests in anonymity in this matter because of the personal and sensitive nature of the underlying facts of this case, which involve allegations of sexual assault."), *report and recommendation adopted*, 2018 WL 1182508 (D.S.C. Mar. 6, 2018); *Doe v. The Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799, 805 (E.D. Pa. 2017) (plaintiff student found responsible for sexual assault in university Title IX proceeding); *Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 202 n.1 (D. Mass. 2017) (noting court had previously granted plaintiff's pseudonym motion, where plaintiff student was found responsible for sexual misconduct in school Title IX proceeding); *Doe v. Brown Univ.*, 166 F. Supp. 3d 177 (D.R.I. 2016) (plaintiff student found responsible for sexual assault permitted to proceed as John Doe); *Doe v. Univ. of St. Thomas*, No. 16-CV-1127(ADM) (KMM), 2016 WL 9307609, at *2 (D. Minn. May 25, 2016) ("In cases involving intensely personal matters, the normal practice of disclosing the parties' identities yields to a policy of protecting privacy. . . . The complaint and its supporting documents describe very private sexual acts, whether consensual or not, between two young college students, and it is difficult to imagine any resolution of this case without further exploration of truly intimate matters." (citations omitted)); *Doe v. Brandeis Univ.,* 177 F. Supp. 3d 561 (D. Mass. 2016) (student found responsible for sexual assault); *Doe v. Alger*, 317 F.R.D. 37, 40 (W.D. Va. 2016) (granting motion to proceed as pseudonym by student found responsible for sexual misconduct); *Doe v.*

*Middlebury*. No. 15-CV-192 (JGM), 2015 WL 5488109 (D.Vt. Sept. 16, 2015) (student found responsible for sexual misconduct); *Doe v. Univ. of S. Florida Bd. of Trustees*, 15-CV-682-T-30 (EAJ), 2015 WL 3453753 (M.D. Fla. 2015) (student accused of battery, threats, and violence against girlfriend); *Doe v. Salisbury Univ.*, 107 F. Supp. 3d 481 (D. Md. 2015) (student accused of sexual assault); *Doe v. Washington & Lee Univ.,* No. 14-CV-00052, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015) (student expelled after finding of nonconsensual intercourse); *Doe v. Univ. of Montana*, 2012 WL 2416481 (D. Mont. 2012) ("With respect to the individual students involved in the Student Conduct Code proceeding, as well as the witnesses . . . involved in that proceeding, the Court finds that the interests of those individuals in avoiding undue embarrassment, harassment, and disclosure of sensitive private information outweigh the public's need to know their names." (*citing Plaintiffs I–XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1068–69 (9th Cir.2000))); *Doe v. Univ. of the South*, 687 F. Supp. 2d 744 (E.D. Tenn. 2009) (student found responsible for sexual misconduct); *Doe v. Penzato*, 10-CV-5154 (MEJ), 2011 WL 1833007, at *3 (N.D. Cal. May 13, 2011) (granting motion by plaintiff alleging sexual assault to proceed as pseudonym; *Doe v. Grinnell Coll.*, No. 17-CV-00079 (RGE) (SBJ) (S.D. Iowa July 10, 2017), ECF No. 39 (finding "the determinative factor here is that disclosure of plaintiff's identity would cause the injury litigated against to be incurred as a result of the disclosure"); *Doe v. Allegheny College*, No. 17-cv-00031 (W.D.Pa. May 1, 2017), ECF No. 18 (granting plaintiff's motion to proceed by pseudonym); *Doe v. Swarthmore College*, No. 2:14-cv-00532-SD (E.D. Pa. Jan. 29, 2014), ECF No. 3 (finding the balance in favor of anonymity "compelling").

Thus, factor one weighs heavily in favor of non-disclosure.

**b.  Identification of Plaintiff would Pose a Risk of Retaliatory Physical or Mental Harm to Plaintiff.**

Although the issue at the heart of this case is Hamilton's failure to follow its own policies and the requirements of Title IX, the subject matter of sexual misconduct and false accusations is a highly volatile issue in the public discourse right now, and identifying Plaintiff would unduly place him at risk for physical or mental harm.  Moreover, as a male victim reporting sexual assault, Plaintiff is even more likely to be stigmatized if is identity is revealed.[1]

The nature of the subject matter at hand, and the social and political climate surrounding accusations of sexual misconduct, strongly warrant protection of the parties by permitting them to remain anonymous.  As other courts have noted, "it stands to reason that there are some persons who would seek to inflict physical or mental harm on Doe if they learned of his real name, especially in light of the ongoing national conversation about sexual misconduct on college campuses."  *Alger*, 317 F.R.D. at 40 (granting motion to proceed by pseudonym to male student plaintiff found responsible for sexual assault in university Title IX proceeding, over defendants' objection that plaintiff "has not been targeted for violence to date [and] cannot name any individual friend or relative of Roe's who might potentially target him"); *see also Doe v. Virginia Polytechnic Inst. & State Univ.*, No. 18-CV-170, 2018 WL 5929647, at *3 (W.D. Va. Nov. 13, 2018) (granting motion to proceed by pseudonym to male student plaintiff found responsible for sexual assault in university Title IX proceeding, because identification "may put him at risk for physical or mental harm"); *Doe v. Trs. of Univ. of Pennsylvania*, No. 16-cv-05088-JP (E.D. Pa. Sept. 26, 2016) ECF No. 12 (granting motion for pseudonym, noting the plaintiff "has a legitimate fear of significant harm should the preliminary finding of his responsibility for a sexual assault be made public");

---

[1] *See, e.g.,* Gillian Mezey & Michael King, *Male Victims of Sexual Assault*, 27 Med. Sci. & Law 122-24 (1987) (abstract: "Adult male victims of sexual assault appear to have similar reactions to female victims, but are more stigmatized, may experience greater subsequent anger and guilt, and are even less likely to report the offence than females.")

*EW v. New York Blood Ctr.,* 213 F.R.D. 108, 111 (E.D.N.Y. 2003) ("[M]any courts have held that, in lawsuits centering around sexual activity and behavior, a plaintiff is entitled to proceed under a pseudonym where revealing the plaintiff's name subjects him or her to the risk of public disapproval, harassment, or bodily harm.").

Thus, factor two weighs heavily in favor of non-disclosure.

### c. Identification Presents Other, Severe Harms, Including that the Injury Litigated Against Would Be Incurred as a Result of the Disclosure of Plaintiff's Identity.

The revelation of Plaintiff's identity would result in significant, irreparable harm to Plaintiff, the exact type of which he seeks to avoid by the commencement of this lawsuit. Specifically, if Plaintiff were required to reveal his identity, any ultimate success in this matter would be negated by the disclosure of his name. Any public internet searches of his name would ultimately turn up results including this lawsuit and the false—yet damning—allegations of the accuser(s), as well as Hamilton's finding of responsibility. In that regard, even if Plaintiff were to achieve his objective of removing the sanction from his academic records, potential future employers, educational institutions, and even future romantic partners would all have access to these allegations at their fingertips – all it takes is a Google search.

The likelihood of being hired (or accepted to a graduate institution of high caliber) is almost nil when an applicant must contend with the social stigma associated with being found responsible and dismissed for sexual misconduct, regardless of whether the decision is ultimately overturned as the result of litigation. As one commentator has noted, employers "take a huge risk by hiring a former harasser. If I'm advising my client, I'm telling them not to make the hire unless they are convinced the allegations are false. And even in that case they are taking a risk." *See* Jon Hyman, Esq., *Sexual Harassment is the Hiring Scarlet Letter*, Workforce.com (Feb. 8, 2018), available at https://www.workforce.com/2018/02/08/sexual-harassment-hiring-scarlet-letter/ (recounting

story of former professor who resigned amid accusations of sexual misconduct, left the country, found new work in China, and was then petitioned by students at new university based on prior, unproven allegations).

Surely this Court can take judicial notice of the prolific rise of the #MeToo movement, which has created a sea change in the nation's views on sexual misconduct, and, more importantly, on the social, professional, and personal implications of being publicly accused of sexual assault. Social media is now regularly weaponized against men accused of misconduct, with online petitions and protests calling for their termination, resignation, and repudiation, oftentimes before the allegations are even tested in any kind of reliable, unbiased proceeding.

According to the New York Times, since the rise of #MeToo, "at least 200 prominent men have lost their jobs after public allegations of sexual harassment."  Carlsen et al., *#MeToo Brought Down 200 Powerful Men.  Nearly Half of Their Replacements are Women*, N.Y. Times, (Oct. 29, 2018), https://www.nytimes.com/interactive/2018/10/23/us/metoo-replacements.html.  Notably, the list of 200 only represents individuals "who permanently lost their jobs or significant roles, professional ties or projects (e.g., concert tours, book deals) within the past year after publicly reported accusations of sexual misconduct," and does not include "cases of those put on temporary or indefinite leave."  And, in the vast majority of the listed cases, the repercussions came on the basis of *allegations alone*, which the accused denied.  *See also,* Brian Stelter and Tom Kludt, *NBC Fires Matt Lauer After Complaint About 'Inappropriate Sexual Behavior'*, CNN (Nov. 29, 2017), https://money.cnn.com/2017/11/29/media/matt-lauer/index.html?iid=EL  (Accused male fired without formal finding); *CBS News Fires Charlie Rose After Sexual Misconduct Allegations*, CBS News (Sept. 23, 2018), https://www.cbsnews.com/news/charlie-rose-fired-cbs-news-sexual-misconduct-allegations/ (Accused male fired without formal finding).

Likewise, college students accused of sexual misconduct have faced intense backlash and harassment when their identities have been revealed, even when their cases were either not yet adjudicated, or they were found not responsible.  *See, e.g.*, Mitchell Byars, *Protests at CU set for Monday as Student Charged in Rape*, Boulder Daily Camera (Mar. 14, 2019) https://www.dailycamera.com/2019/03/14/protests-at-cu-set-for-monday-as-student-charged-in-rape/ (University of Colorado students demanding school expel student *accused* of sexual assault; posters with the accused student's photo and the allegations posted on campus); Ariel Kaminer, *Accusers and the Accused, Crossing Paths at Columbia University*, N.Y. Times (Dec. 21, 2014) https://www.nytimes.com/2014/12/22/nyregion/accusers-and-the-accused-crossing-paths-at-columbia.html (student accused of sexual assault *and found not responsible* in university Title IX proceeding was "denounced as a rapist on fliers and in a rally in the university's quadrangle," had his "name . . . plastered on campus bathrooms and published in easily searchable articles," and had his photo posted on the internet by "detractors . . .  as warnings to strangers"); Patrick Witt, *A Sexual Harassment Policy that Nearly Ruined My Life*, Boston Globe (Nov. 3, 2014), https://www.bostonglobe.com/opinion/2014/11/03/sexual-harassment-policy-that-nearly-ruinedlife/hY3XrZrOdXjvX2SSvuciPN/story.html (article written by Yale student accused of unspecified acts in an "informal" university proceeding, explaining that revelation of the allegations "cost me my reputation and credibility, the opportunity to become a Rhodes scholar, the full-time job offer I had worked so hard to attain, and the opportunity to achieve my childhood dream of playing in the NFL.  I have had to address it with every prospective employer whom I've contacted, with every girl that I've dated since, and even with Harvard Law School during my admissions interview.").

Similar outcomes have resulted from findings of responsibility.  *See* Richard Adams, *Warwick University Says Rape Threat Pair Won't Return*, Guardian (Feb. 4, 2019) https://www.theguardian.com/education/2019/feb/05/warwick-university-says-threat-pair-wont-return (students found responsible for making rape threats successfully appealed initial ten-year suspension, resulting in protests by "[s]enior academics and heads of department," "a number of Warwick alumni contacted the university to express their dismay [and a] student protest meeting [being] planned," and "an online petition rapidly gained thousands of signatures" to ban the students); *see also* Cathy Young, *Exclusive: Brown University Student Speaks Out on What It's Like to Be Accused of Rape*, Daily Beast (June 8, 2014), https://www.thedailybeast.com/exclusive-brownuniversity-student-speaks-out-on-what-its-like-to-be-accused-of-rape    (student    found responsible for sexual assault in university proceeding and suspended for one year; accuser subsequently publicly identified the student, leading to public protests, national news stories, and televised commentary by a United States senator that the accused student "brutally raped" the complainant and "should be in jail, not with a one-year suspension").

In other words, the harm that Plaintiff faces should he be publicly identified in this matter could not possibly be ameliorated by an eventual adjudication in his favor: the existence and publication of the allegations alone would forever impact his life in concrete, detrimental, life-altering ways that go well beyond any sort of immaterial, low-level "embarrassment."  *See Doe v. Alger*, 317 F.R.D. 37, 42 (W.D. Va. 2016) ("The court agrees with Doe that irreparable harm to his name is a relevant factor here and that it tips in favor of anonymity.  If he were not allowed to proceed anonymously, part of the relief he seeks—expungement of his student record—would fall short of making him whole: the cat would have already been let out of the bag.").  Indeed, in *Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp 3d 602, 622 (E.D. Va. 2016), not only

was the plaintiff—a male university student found responsible for sexual misconduct—permitted to litigate by pseudonym, he ultimately won summary judgment against the university on the specific grounds that the stigma associated with being found responsible for sexual assault, combined with the sanction imposed by the university, constituted a concrete injury:

> [P]laintiff's lost opportunity to continue with his post-secondary education, coupled with the possibility that he may be unable to pursue meaningful educational opportunities elsewhere while his name remains associated with sexual misconduct, inevitably affects plaintiff's professional prospects. . . .   And *common sense suffices to understand that an adjudication of responsibility for sexual misconduct carries a much more powerful stigma* than an adjudication of run-of-the-mill assault or vandalism.
>
> *Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d at 622 (emphasis added).

*See also Doe v. Cummins*, 662 Fed. Appx. 437, 445 (6th Cir. 2016) (when plaintiff male university student was found responsible by his university for sexual assault, "the adverse disciplinary decision did, and continues to, impugn his reputation and integrity, thus implicating a protected liberty interest.").   The fact that courts have recognized the stigma of a sexual assault adjudication as sufficiently damaging to constitute a legally cognizable harm serves to underscore Plaintiff's fear of disclosure in the instant matter as much more than a mere personal desire to avoid embarrassment.

The United States District Court for the District of New Hampshire has astutely recognized:

> [T]hese potential harms are severe and reasonable. . . .   [S]ignificant in this case is plaintiff's argument that public disclosure will subject him to reputational damage and will impair his future educational and career prospects, regardless of the actual outcome of this action. Plaintiff cites other campus sexual-assault cases to show that the mere accusation that one has committed a sexual assault can subject the accused to lasting reputational damage and harassment, even where, as here, the accused is ultimately found not culpable of

14

> sexual assault.  Such a concern is only exacerbated in the Internet age, which can provide additional channels for harassment and will connect plaintiff's name to [the school's]'s findings and sanction forever, whether or not he is successful in this litigation.  . . . Plaintiff has a reasonable fear that, *whatever the outcome of the action, public identification will subject him to severe reputational harm and harassment*, and will defeat the very purpose of this litigation.
>
> *Doe v. Trustees of Dartmouth Coll.*, No. 18-CV-040-LM, 2018 WL 2048385, at *5–6 (D.N.H. May 2, 2018) (emphasis added) (citations omitted).

*See also Doe v. Univ. of St. Thomas*, No. 16-CV-1127, 2016 WL 9307609, at *2 (D. Minn. May 25, 2016) ("Even if his lawsuit were successful and his claims of unfair treatment were vindicated down the road—an outcome about which the Court offers no opinion of likelihood—the complained-of damage to Mr. Doe's reputation would be perhaps unfixable if his identity is known. . . . [F]orcing Mr. Doe to proceed under his true name would guarantee a permanent label as a sexual offender, discoverable with a simple Google search; that is arguably worse than the reputational harm he complains of from the University's currently confidential disciplinary proceedings. This factor weighs heavily in favor of pseudonymous proceeding.").

The harm that Plaintiff fears if his name is revealed in this case is concrete, severe, and lasting, and would ultimately render any subsequent victory on the merits hollow, as the very damage he seeks to avoid by this lawsuit would be incurred as a result of the disclosure.  In the current social climate, a mere allegation of sexual assault alone is enough to ruin a person's life and career.  Plaintiff should not be forced to risk his entire professional future and personal reputation in order to have his case heard on the merits.  His interest in privacy by far outweighs the public interest in open proceedings.

Thus, factor three weighs heavily in favor of non-disclosure.

### d. Plaintiff Is Particularly Vulnerable to the Possible Harms of Disclosure, Particularly in Light of His Age.

Plaintiff in the instant case is a young man, not yet graduated from college and at the very inception of his adult life.  As discussed above, permitting disclosure of his identity, and thus subjecting him to the crushing stigma of having been found responsible for committing sexual assault, would effectively end his professional career before it has even begun, and would severely detriment his ability to find a romantic partner and participate in all of the ordinary endeavors of adult life.  Indeed, it is not as if Plaintiff has a professional reputation or network, spouse, or other forms of social and career safety nets in place that could cushion the blow of the allegations against him; to the contrary, the very reason for bringing this action is because Hamilton's findings and actions will irreversibly impair Plaintiff's ability to pursue his personal, professional, and academic future if not reversed and remedied immediately.

Thus, factor four weighs heavily in favor of non-disclosure.

### e. The Suit is Challenging the Actions of a Partially Federally-Funded College.

With respect to this factor, courts recognize that "where a plaintiff attacks governmental activity, for example a governmental policy or statute, the plaintiff's interest in proceeding anonymously is considered particularly strong[, because in] such circumstances the plaintiff presumably represents a minority interest (and may be subject to stigmatization), and there is arguably a public interest in a vindication of his rights." *EW v. New York Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003).  Plaintiff is suing Hamilton College, a partially federally-funded private college.  Although Hamilton is not necessarily a government entity, it is also not an entirely private corporation.  In the instant case, there is a strong public interest in vindicating the rights of male students at Hamilton College, given Hamilton's non-compliance with federal law and their own policies.

As the District Court for the Eastern District of New York has explained, a private school and its employees "are neither governmental entities nor ordinary private parties. However, . . . the [school] 'is organized solely to perform an important, public service' and the [employee] is employed to assist in achieving the [school]'s goals.  Given the significant roles held by these defendants in their community, plaintiff's allegations . . . raise concerns affecting a larger association rather than the interest of an individual plaintiff." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006) (quoting *EW,* 213 F.R.D. at 111–12); *see also Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. 2006) (when a lawsuit "affects many similarly situated individuals, the identities of the particular parties bringing the suit may be largely irrelevant to the public concern with the nature of the process.").

Thus, factor five weighs in favor of non-disclosure.

### f.   Defendant Is Not Prejudiced by Allowing Plaintiff to Press His Claims Anonymously.

Permitting Plaintiff to appear in this matter as John Doe and precluding Defendant from revealing Plaintiff's identity in court filings or otherwise will not "prejudice[e] the opposing party's ability to litigate the case." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000).  In the instant case, Defendant is well aware of Plaintiff's identity.  *See* Declaration of Andrew T. Miltenberg, Esq. ("Miltenberg Decl.")  ¶ 4, enclosed with this motion.  As such, Defendant is perfectly able to defend this case, as it may gather relevant evidence (the vast majority, if not all of which, is in Defendant's possession), conduct discovery, and formulate defenses just as it would if Plaintiff were to proceed under his own name.  Thus, "[o]ther than the need to make redactions and take measures not to disclose plaintiff's identity, defendant[] will not be hampered or inconvenienced merely by Plaintiff's anonymity in court papers." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006).

Thus, factor six weighs heavily in favor of non-disclosure.

> **g.  The Plaintiff Has Sought to Keep his Identity Confidential.**

"The extent to which the plaintiff's identity has been kept confidential may . . . affect the weight of the privacy interest," because the plaintiff's interest in anonymity throughout the litigation is stronger where he has sought to protect his anonymity prior to the litigation.  *Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. 2006).  In the instant case, Plaintiff has done everything in his power to keep the matter of his disciplinary process confidential.  The only people to whom Plaintiff has disclosed this matter include his immediate family, his legal counsel, and a few very close friends, for emotional support.  *See* Miltenberg Decl. ¶ 3.  Moreover, due to the constraints of the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g, Defendant is generally restricted from revealing Plaintiff's disciplinary records absent certain circumstances.

Thus, Plaintiff has done everything in his power to maintain anonymity, and factor seven weighs in favor of non-disclosure.

> **h.  The Public's Interest in the Litigation is not Furthered by Requiring Plaintiff to Disclose His Identity, and There is a Weak Public Interest in Knowing Plaintiff's Identity.**

The primary public interest in the instant action is Hamilton's treatment of male students, whether its Title IX processes violate state and federal law, and whether there is a pattern of bias and discrimination against male students.  Although the specifics of the case are, of course, relevant to this determination, Plaintiff's identity in and of itself has no relevance to the public interest.  For example, Plaintiff is not a public figure, nor a supervisory employee of the University, such that the public would have an interest in learning his specific identity.  As such, there is a weak public interest in learning Plaintiff's identity, and the public's interest in this matter would not be furthered by disclosing Plaintiff's identity.  *See Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y.

2006) (permitting student alleging sexual assault by Rabbi at Yeshiva school to proceed pseudonymously).  As the Fifth Circuit has opined,

> The equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical. The public right to scrutinize governmental functioning is not so completely impaired by a grant of anonymity to a party as it is by closure of the trial itself.  Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them. The assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name.

> *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 574 (1980)).

*See also Doe v. Evans,* 202 F.R.D. 173, 176 (E.D. Pa. 2001) (protecting Plaintiff's identify will not "impede the public's ability to follow the proceedings").  Thus, factors eight and nine weigh in favor of non-disclosure.

### i.   There Are Minimal Alternative Mechanisms for Protecting the Confidentiality of the Plaintiff.

The final factor for this Court's consideration is whether there are alternative mechanisms for protecting Plaintiff's confidentiality.  *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d at 190. In the instant case, the only alternative method would be to seal the entirety of this action; however, doing so would provide even less public access than Plaintiff's proposal of simply protecting the identities of the involved students.

Thus, factor ten weighs in favor of non-disclosure.

## CONCLUSION

Based on the foregoing, in consideration of New York state law and the balancing of the relevant interests, this Court should allow Plaintiff to proceed by pseudonym in this matter and to identify the other, non-party students by pseudonym.  The interests of Defendant and/or the public will not be harmed if Plaintiff's name is not revealed, whereas Plaintiff, along with the non-party

students involved in this matter, would be subject to great risk of harm and prejudice if Plaintiff is forced to disclose his identity at this time.  For these reasons and other such reasons as may appear just to the Court, Plaintiff respectfully requests that his *Ex Parte* Motion to Proceed Under Pseudonym and for Protective Order be granted in its entirety.

Dated: New York, New York
        February 11, 2020

                                    **Respectfully submitted,**

                                    NESENOFF & MILTENBERG, LLP

                                    By:  ___/s/ Andrew T. Miltenberg
                                    Andrew T. Miltenberg, Esq.
                                    Stuart Bernstein, Esq.
                                    Adrienne Levy, Esq. *(admission pending)*
                                    363 Seventh Avenue, Fifth Floor
                                    New York, New York 10001
                                    (212) 736-4500
                                    amiltenberg@nmllplaw.com
                                    sbernstein@nmllplaw.com
                                    alevy@nmllplaw.com

                                    **Attorneys for Plaintiff John Doe**